IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

PAUL WELCH, #1047736,           )
                                )    NO. 4:04-cv-10229-REL-RAW
          Plaintiff,            )
                                )
   vs.                          )    REPORT AND RECOMMENDATION
                                )
CORRECTIONAL OFFICER MAT        )
MANNING, CORRECTIONAL OFFICER   )
BRIAN NEITZEL, ANDREA WRIGHT,   )
GRIEVANCE OFFICER,              )
CHARLIE HIGGINS, and            )
LIEUTENANT ROBERT KELLER,       )
                                )
          Defendants.           )

Plaintiff Paul Welch, an inmate at the Anamosa State Penitentiary, filed this action on April 23, 2004, alleging that while he was incarcerated at the Mount Pleasant Correctional Facility (MPCF) he was threatened and retaliated against for appealing disciplinary reports and submitting grievances, that correctional officers read his legal mail, and that the grievance officer and deputy superintendent at MPCF ignored his grievances about these acts. Welch's complaints sound under the First and Due Process Clause of the Fourteenth Amendments to the U.S. Constitution. 42 U.S.C. § 1983. Welch seeks damages. Defendants dispute the factual basis of Welch's claims, contend no constitutional violation occurred, and they are entitled to qualified immunity, though they do not address qualified immunity beyond noting it as an issue.

Jurisdiction is predicated on 28 U.S.C. § 1331, 1343(a)(3), (4). The case was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and came on for evidentiary hearing on June 2, 2005 and July 21, 2005. The trial was conducted in part through use of the Iowa Communications Network (ICN) as indicated in the record, a fiber optic system which enabled participants in remote locations to participate by audio and visual connection. Plaintiff appeared pro se.

## FINDINGS OF FACT

Paul Welch is an inmate in the custody of the Iowa Department of Corrections (IDOC). In June 2003 he was transferred from the Fort Dodge Correctional Facility to the Mount Pleasant Correctional Facility (MPCF) so he could complete a sex offender treatment program (SOTP) prior to discharge of his sentence. Welch is not due for discharge until 2022. Defendants Mat Manning and Brian Neitzel are correctional officers at MPCF. Defendant Andrea Wright is a grievance officer at MPCF. Defendant Charlie Higgins is the deputy superintendent at MPCF. Lt. Robert Keller is a supervisor at MPCF.

On February 23, 2004, Manning wrote a disciplinary report on Welch, alleging Welch committed a "pegging out" violation

occurring at 3:45 p.m.[1] (Ex. D at 1). The disciplinary procedure at MPCF provides that for minor offenses such as this, a sanction[2] is automatically imposed, unless the inmate wants a review of the report. (Ex. G at 19). Welch testified that when Manning told him he was placing him on report he (Welch) said he wanted to appeal, whereupon Manning got upset and said he would give Welch a second report if he appealed. (Tr. at 62). Welch appealed the report. (Ex. D at 1). Manning denied threatening to write Welch up if he appealed. (Tr. at 123-24). Later that same day Manning observed Welch smoking in his room, a rule violation, and wrote a second disciplinary report the next day. (Ex. D at 2). Welch did not appeal the second report. (Id.)

Shortly after their exchange about the pegboard report, Welch filed a grievance about Manning's alleged threat to write another report. (Ex. J). The grievance went to Andrea Wright. On March 9, she denied the grievance because it "surround[ed] a disciplinary report." (Id. at 3). She referred Welch to his Offender Information Guide and Policy IV-A-15,[3] both of which note

---

[1] As the Court understands the testimony, in order to keep track of a general population inmate's whereabouts at MPCF, living units have a pegboard, on which an inmate is supposed to place a peg indicating where he is in the facility.

[2] A standard sanction for minor offenses is restriction to the inmate's room at night for a period of days. (Ex. G at 19).

[3] There is some confusion in the record about the version of the policy involved, but that the policy was as indicated in the text does not appear to be in dispute.

that "[t]he grievance program is not a process for those areas which currently have existing appeal mechanisms (i.e., disciplinary process, classification decisions, publication review) . . . ." (Ex. 3 at 1; Ex. C at 2).

On February 24, 2004[4] Welch wrote a letter to Rory Calloway at the state Ombudsman's office, complaining about Manning and the threat. He received a response back from Calloway, dated March 29, 2005. (Ex. 2). Because it was not clear to Calloway whether Welch had followed through with the grievance process, Calloway told him he could write back to the Ombudsman's office if Welch was not satisfied with the grievance response. (Id.) The context of the letter indicates that Calloway was of the opinion a grievance could be filed based on the conduct of an officer issuing a discipline report. (Id.)

On April 11, 2004, officer Neitzel conducted a search of Welch's room as part of MPCF's random shakedown practices. (Tr. at 139-40; Ex. E). Among the items discovered which Neitzel considered to be contraband was "one legal pad with stuff written down about C/O M Manning." (Ex. F). There was no date, address, or salutation on the document (hereinafter the "Manning document"). (Tr. at 103-04, 138-39). Neitzel wrote a disciplinary report on Welch for possession of contraband, including the Manning document. (Ex. E at

---

[4] Welch's letter to Calloway is not part of the record, however, the Court infers the date it was written from Calloway's response back to Welch. (Ex. 2).

4

1). The items taken in the shakedown were retained for the disciplinary hearing.

On April 11, 2004, before any disciplinary hearing had been held, Welch filed a grievance about the shakedown, specifically asserting that the Manning document was a letter to the Ombudsman giving more information about Welch's February grievance and Manning. (Ex. K at 1-2). On April 16, 2004, Wright responded to the grievance, indicating she had viewed the document in question, that it was not marked legal mail nor was there any other indication it was to be sent to the Ombudsman, and that Welch would have to wait until after the disciplinary report was heard before any seized items were returned. (Ex. K at 3). Wright denied the grievance. (Id.) Welch filed an appeal of the grievance on April 17, 2004. (Ex. K at 6). He complained about the fact Wright had read the Manning document. Charlie Higgins reviewed the appeal and denied the grievance as non-grievable because it related to the disciplinary proceedings following the shakedown, citing to the policy against grieving disciplinary reports. (Id. at 8). A subsequent appeal to the IDOC was denied on May 17, 2004. (Ex. K at 9).

Iowa Code § 2C.14 provides that prisoner letters to and from the state "citizen's aide" (a/k/a Ombudsman) are to be sent and received unopened. MPCF policy categorized correspondence with the Ombudsman as having the same status as "legal mail." (Ex. L).

5

A disciplinary hearing was held on April 22, 2004 before Administrative Law Judge Frank Cooney. (Ex. E at 2). The ALJ found Welch guilty of having unauthorized items in his possession and of obstructive/disruptive conduct by having a container with single matches. There was no mention of the "Manning document" in the ALJ's Findings of Fact. (Id.) However, the Court infers from the absence of reference to the document in the Findings of Fact and from Cooney's directions concerning the disposition of the contraband that Welch told Cooney, and Cooney believed, the document was intended to be a letter to the Ombudsman's office, as there is an additional Contraband Report concerning just the document, noting "1 letter to Ombudsman about CO Manning to be sent to the Ombudsman after Offender Welch provides envelope & postage." This report was signed by Lt. Keller on April 22, 2004 and Welch was notified of its requirements. (Ex. F at 3; Tr. at 86-87).

On May 4, 2004 Welch provided to Keller a stamped, addressed envelope and two additional pages to be sent to the Ombudsman. (Ex. F at 3). Welch testified he wanted to mail the letter himself, but that Keller would not let him. He further testified Keller, in Welch's presence, read the additional two pages, and put them with the Manning document in the envelope, and sealed it. (Tr. at 86-87). Keller did not recall reading the two additional pages. (Id. at 179). Keller placed a sticker on the back of the envelope which read "This letter contains offender

6

contraband -- do not return to offender," and put it in the mailbox in Welch's presence. (Id. at 13). The letter was received in the Ombudsman's office on May 10, 2004. (Id. at 12).[5]

Before bringing the envelope to Keller's office, on May 3, 2004 Welch filed a grievance about Keller's conduct in withholding the Manning document. (Ex. 5). Although the grievance itself was not in evidence, Wright's May 17, 2004 response to it was. From it the Court infers that Welch's complaint was similar to his April 11 grievance (Ex. K), as Wright's response was that the issues had already been addressed in the prior response and grievances could not be re-grieved. (Ex. 5 at 1). Before receiving Wright's response, Welch filed yet another grievance on May 13 and sent a letter to Higgins on May 15, 2004 (Ex. 7). The substance of the May 13 grievance is not in evidence, but the Court infers from Wright's May 21, 2004 response (Ex. 4), that Welch was complaining about Lt. Keller's conduct in mailing the letter out of the institution, instead of letting Welch mail it himself. Wright denied this grievance. Higgins treated the May 15 letter as related to the May 3 grievance and referred Welch to Wright's May 17 response denying that grievance. (Ex. 5 at 2). Higgins at some point called Welch into his office to get Calloway on the telephone in an attempt to resolve the issue in the grievance.

---

[5] Keller made and kept a copy of the Manning document. (Tr. at 184).

Meanwhile, on May 15, 2004 officer Neitzel wrote a disciplinary report on Welch charging him with smoking in his room. (Ex. 1 at 2). Welch appealed the report; the appeal was denied on May 18, 2004. (Id.) On May 16, 2004, officer Neitzel wrote a disciplinary report on Welch about another pegboard violation. (Ex. 6). Neitzel believed this was Welch's sixth pegboard violation and charged it as a major offense. (Tr. at 151-53).

On May 14, 2004, MPCF determined that Welch should be sent to another institution, ASP. The reason given for the transfer was

> Offender will not be treatment program eligible for several more years. Discharge date of 2022. He does not admit to his crimes. More suitable for housing in a more secure facility until he gets closer to SOTP eligibility. No threat group affiliation.

(Ex. A at 1). The transfer request was made by staff member Ronnie Ashton, who is not involved in this lawsuit. None of the defendants appear to have been involved in the transfer decision, which Wright testified came about because of some major changes in SOTP program eligibility. Because Welch was not close enough to his discharge date and denied his offense, he became ineligible under the changes. (Tr. at 232-33). The transfer request was approved on May 18, 2004 and Welch was transferred to ASP on June 15, 2004. (Id.)

Welch filed this lawsuit on April 23, 2004. He was allowed to amend his complaint to add Higgins as a defendant by order dated June 7, 2004. Defendants filed a motion for summary

judgment, arguing plaintiff's complaint was barred because he did not allege any physical injury as required by 42 U.S.C. § 1997e(e). Chief Judge Longstaff denied the motion and referred this case to the undersigned for report and recommendation.

## DISCUSSION INCLUDING ADDITIONAL FINDINGS OF FACT

### The Claims and Legal Principles

Welch complains he was disciplined and eventually transferred to ASP in retaliation for appealing a disciplinary report and using the prison grievance system, his grievances were rejected on invalid grounds as ungrievable, and prison officials intercepted and read "legal mail" intended for the Ombudsman.

An act in retaliation for the exercise of a constitutional right is actionable under § 1983 even if it would have been proper if taken for a different reason. Madewell v. Roberts, 909 F.2d 1203, 1206 (8th Cir. 1990)(quoting Freeman v. Blair, 793 F.2d 166, 178 (8th Cir. 1986)); see Cody v. Weber, 256 F.3d 764, 771 (8th Cir. 2001); Goff v. Burton, 7 F.3d 734, 738 (8th Cir. 1993), cert. denied, 512 U.S. 1209 (1994). Among the constitutional protections retained by prison inmates is the First Amendment right "to petition for redress of grievances." Trobaugh v. Hall, 176 F.3d 1087, 1088 (8th Cir. 1999); Ward v. Dyke, 58 F.3d 271, 275 (6th Cir.), cert. denied, 516 U.S. 991 (1995). The right to petition includes the right of access to the courts (which also has Due Process and Equal Protection Clause roots) and to use a

prison grievance system to complain about the conditions of confinement. See, e.g., Rouse v. Benson, 193 F.3d 936, 940-41 (8th Cir. 1999); Trobaugh, 176 F.3d at 1088; Ward, 58 F.3d at 275; see also Berdella v. Delo, 972 F.2d 204, 210 n.9 (8th Cir. 1992)(concerning source of the right of access to the courts). Prison officials may not, therefore, discipline, transfer, segregate or otherwise mete out less favorable treatment in retaliation for an inmate's exercise of these rights. See Rouse, 193 F.3d at 940; Cooper v. Schriro, 189 F.3d 781, 784 (8th Cir. 1999); Goff, 7 F.3d at 738; Madewell, 909 F.2d at 1206; Sanders v. St. Louis County, 724 F.2d 665, 666 (8th Cir. 1983). Verbal, informal complaints outside of an administrative system set up for the redress of grievances have more uncertain protection under the First Amendment. See Bowman v. City of Middletown, 91 F. Supp. 2d 644, 664 (S.D.N.Y. 2000); Anderson v. Sundquist, 1 F. Supp. 2d 828, 833 (W.D. Tenn. 1998). The nature and extent of constitutional protection in this regard is dependent on the circumstances.

      An inmate plaintiff claiming retaliation has the heavy burden of demonstrating that retaliation for protected activity was "'the actual motivating factor for'" the challenged action. Goff, 7 F.3d at 737 (quoting Murphy v. Missouri Dep't of Correction, 769 F.2d 502, 503 n.1 (8th Cir. 1985)). This is a "but for" causal standard. Goff v. Burton, 91 F.3d 1188, 1191 (8th Cir. 1996). Claims of retaliatory discipline face an additional hurdle. "'[I]f

the discipline which the prisoner claims to have been retaliatory was in fact imposed for an actual violation of prisoner rules or regulations, then the prisoner's claim that the discipline was retaliatory in nature must fail.'" Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994), cert. denied, 515 U.S. 1145 (1995)(quoting Goff, 7 F.3d at 738). An actual violation of a prison rule is shown if there is "some evidence" the violation occurred. Moore v. Plaster, 313 F.3d 442, 444 (8th Cir. 2002)(per curiam), cert. dismissed, 539 U.S. 901 (2003).

There is no federal constitutional requirement that a state prison have a grievance system. It follows that a federal court is not the place to litigate whether prison officials are correctly applying prison grievance rules. See Shorter v. Lawson, 403 F. Supp. 2d 703, 706 (N.D. Ind. 2005); Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986); see also Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989). At the very least the judgment of prison officials as to the merits of an individual grievance or the grievability of a complaint is entitled to a large measure of deference. Cf. Moorman v. Thalacker, 83 F.3d 970, 974 (8th Cir. 1996)(involving interpretation of a prison disciplinary rule).

For the purposes of this ruling the Court will assume that an Iowa inmate's correspondence to the Ombudsman is the equivalent of a communication to the inmate's lawyer engaged in representing the inmate in pending matters. In this circuit legal

mail may not be opened for inspection outside the inmate's presence and the content may not be read beyond perhaps what is necessary to ascertain that the correspondence is legal mail. See Cody, 256 F.3d at 768 (citing cases). However, to be accorded special status legal mail must be clearly marked or kept in a manner which alerts prison staff to the fact that it is a confidential communication. See Wolff v. McDonell, 418 U.S. 539, 576 (1974); Jensen v. Klecker, 648 F.2d 1179, 1182 (8th Cir. 1981).

With these general legal principles in mind the Court turns to the allegations against each defendant.

**Manning**

The Court is reluctant to take at face value Welch's testimony about Manning's alleged threat to write him up if he appealed the pegboard report, though in the prison environment it is believable that Manning made a sharp response when Welch said he would appeal the first report. There is no evidence of prior animosity or problems between Manning and Welch and nothing in the circumstances which would support a reason for hostility from Manning. All that was involved was a simple pegboard violation, hardly an issue to evoke the kind of response Welch described.

Even if Manning had a retaliatory motive in making the second disciplinary report for smoking, the report was supported by "some evidence." Manning testified he observed Welch smoking. That a prison rule violation occurred does not seem to be contested in

the evidence. Welch waived a hearing on the report and did not appeal the minor sanction imposed. Had Welch believed he did not commit the rule violation it is likely he would have appealed as he did on other occasions.

**Neitzel**

As the Court understands Welch's testimony, his complaints against Officer Neitzel are that during the shakedown he seized the Manning document which Welch says was intended to be a letter to the Ombudsman, Neitzel's writeups were retaliatory or motivated by animus toward him, and Neitzel was involved in Welch's transfer to ASP.

There are two issues with respect to the Manning document -- reading and seizing. Neitzel's involvement concerns mainly the latter. The document apparently gave no indicia it was a communication to the Ombudsman. Because there was something written about a staff member, Neitzel contacted the shift supervisor, Lieutenant Keller, who instructed Neitzel to treat the writing as contraband and turn it in to Keller. Neitzel did as instructed. Neitzel's conduct in obeying his supervisor's instruction to seize a questionable document found during a routine shakedown did not violate any First Amendment or other constitutional right of Welch.

Neitzel's writeups for the pegboard violation and possession of the contraband were supported by "some evidence" of a violation of prison rules, indeed Welch does not contend

otherwise. While Welch argues the cigarette which led to the smoking violation was not his, the Court is not convinced Neitzel acted out of improper motive in writing Welch up for this minor rule violation.

As for Welch's transfer to ASP, while a prisoner cannot be transferred in retaliation for the exercise of a constitutional right," Goff, 7 F.3d at 737(quoting Olim v. Wakinekona, 461 U.S. 238, 250 (1983) and citing Ponchik v. Bogan, 929 F.2d 419, 420 (8th Cir. 1991)), there is no evidence that Neitzel or any other defendant was involved in the transfer decision, or that it was made for other than the reasons testified to by Wright, that the SOTP eligibility requirements changed and Welch did not meet those requirements.

**Wright and Higgins**

The claims against Wright and Higgins have to do principally with their failure to address Welch's grievances about Manning's alleged threats following Manning's February 23, 2004 disciplinary report, and the temporary seizure and reading of the Manning document. (Exs. J and K). Wright viewed the complaint about Manning as non-grievable because it was related to a discipline which had its own appeal process and Higgins took the same view of Welch's grievance concerning the seizure of the Manning document. As noted, under MPCF's grievance policy, "[t]he grievance program is not a process for those areas which currently have existing

14

appeal mechanisms (i.e., disciplinary process . . .)." (Ex. C). Were the Court a prison official charged with responding to grievances it might well agree with Welch, and apparently Ombudsman Calloway, that the grievance about Manning's conduct was not an attempt to circumvent the disciplinary appeal process, but rather concerned the conduct of corrections staff associated with the discipline, something the disciplinary appeal process was not designed to correct. Higgins' view of the Manning document grievance as involving the related disciplinary report was objectively on firmer ground since the disciplinary proceedings would determine whether the document was contraband. In any event, the Court is not a prison official and Wright and Higgins as prison officials charged with applying the grievance program are entitled to interpret and apply the relevant policies as they think appropriate. Their decisions that the grievances were not grievable simply do not present an issue of constitutional magnitude.

Welch also contends Wright should not have read the Manning document in deciding his grievance over its seizure. Welch had grieved that the document was a letter to the Ombudsman. Because it was not evident the document was correspondence intended for the Ombudsman, Wright could review it, as she testified, to "see if it was, in fact, a legal letter." (Tr. at 194).

**Keller**

Finally, as the Court understands the claims against Keller, Keller is sued for his role in seizing and reading the

15

Manning document (and the two additional pages which went with it), insisting on mailing the document to the Ombudsman rather than allowing Welch to mail it, and putting the sticker on the letter to the Ombudsman identifying the contents as contraband which should not be returned to Welch. The document was seized during a routine shakedown[6] and was kept as contraband until disciplinary proceedings were completed. The temporary seizure of the document until completion of disciplinary proceedings did not violate Welch's First Amendment or Due Process rights because the status of the letter as a protected communication was unclear and the record is insufficient to conclude that Keller's view of the document as potential contraband subjecting Welch to discipline was objectively unreasonable. Moorman, 83 F.3d at 974. Like Wright, Keller could read the Manning document to determine if it was legal mail.

After the disciplinary proceeding concluded the document was released for disposition and with the two additional pages was eventually sent to the Ombudsman in a stamped, addressed envelope provided by Welch. Keller undoubtedly looked at the two additional pages, but the Court doubts he read them in any detail. His concern seems to have been ensuring the Manning document permanently left

---

[6] To the extent Welch's complaint can be viewed as challenging Neitzel's right to search his room in the first place, the random shakedown of cells in the prison context does not require probable cause. See Hudson v. Palmer, 468 U.S. 517, 529 (1984)("wholly random searches are essential to the effective security of penal institutions").

16

the institution so it would no longer be an issue. Keller insisted on mailing the document and marking it as contraband for this purpose. (Tr. at 174). His conduct in this regard had no constitutional implications.

None of the defendants deprived Welch of an ability to communicate with the Ombudsman. The problem had to do with the uncertain nature of the Manning document. Welch had corresponded with the Ombudsman before without difficulty. As far as the record indicates, Welch could at any time have properly addressed and sent a letter to the Ombudsman with the same content as the disputed Manning document without interference by prison officials.[7]

---

[7] As the facts asserted by Welch do not show that any defendants' conduct violated a constitutional right, defendants would be entitled to qualified immunity. Wright v. Rolette Cty., 417 F.3d 879, 884 (8th Cir. 2005)(quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)).

**REPORT AND RECOMMENDATION**
**AND ORDER**

IT IS RESPECTFULLY RECOMMENDED that Welch's complaint be dismissed against all defendants as he has failed to show a violation of his federal constitutional rights under any colorable theory.

IT IS ORDERED that the parties have until **March 6, 2006,** to file written objections, pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Wade for Robinson v. Callahan, 976 F. Supp. 1269, 1276 (E.D. Mo. 1997). Any objections filed must identify the specific portions of the Report and Recommendation and relevant portions of the record to which the objections are made and set forth the basis for such objections. See Fed. R. Civ. P. 72; Thompson, 897 F.2d at 357. Failure to timely file objections may constitute a waiver of a party's right to appeal questions of fact. Thomas v. Arn, 474 U.S. 140, 155 (1985); Griffini v. Mitchell, 31 F.3d 690, 692 (8th Cir. 1994); Halpin v. Shalala, 999 F.2d 342, 345 & n.1, 346 (8th Cir. 1993); Thompson, 897 F.2d at 357.

IT IS SO ORDERED.

Dated this 6th day of February, 2006.

ROSS A. WALTERS
UNITED STATES MAGISTRATE JUDGE